## LOWEREE v. THE CITY OF NEWARK.

1. It is not necessary that compensation should precede the actual appropriation of lands for a public use by the state, or by a municipal corporation by state authority. It is sufficient that an adequate remedy is provided, which the party may resort to on his own motion to recover compensation. In this respect there is a distinction between a taking by a public municipal corporation, and by an individual or private corporation.

2. The peculiar benefit derived by the owner from the improvement, in respect of which he may lawfully be compelled to contribute towards the costs and expenses, may be taken as part of his compensation for lands taken, and the legislature may constitutionally provide, that the assessment for benefits may be set off in an action by the owner to recover the assessment for the damages for the taking of lands.

3. On writ of error, every intendment will be made in favor of the legality of the proceedings under review. An objection, to be available, must be made apparent on the face of the record.

---

On error to Essex Circuit.

Argued before the CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For the plaintiff in error, *W. H. Hagaman, Jr.*

*Contra, Wm. B. Guild, Jr.*

The opinion of the court was delivered by

DEPUE, J.    The plaintiff's action is on a warrant, in form as follows :

"NEWARK, N. J., Feb'y 21, 1874.

"*Treasurer of the city of Newark:*

"Pay to the order of Frank M. Loweree, five hundred and thirty-five and $\frac{77}{100}$ dollars, for and on account of opening South Twelfth street.   Award number 5.

"N. PERRY, *Mayor.*

"$535 $\frac{77}{100}$.

"Countersigned :

"JAMES GILLEN, *City Clerk.*"

This warrant was made in pursuance of the second section of the city ordinance, which requires that all money shall be drawn from the treasury on warrants, signed by the mayor and city clerk, and countersigned by the auditor of accounts. (*Ord. of* 1857, *p.* 103.)   It was issued to the plaintiff for damages awarded to him for lands taken for the opening of South Twelfth street.

The defendants pleaded the general issue, and gave notice of an assessment against the plaintiff for benefits arising from the opening of the same street, amounting to $392.50, which would be used as satisfaction *pro tanto* of the plaintiff's demand.

The award of damages was ratified May 16th, 1873, and the assessment of benefits, January 2d, 1874.

The cause was tried by the court, without a jury.   The court allowed the amount of benefits to be deducted from the damages, and gave judgment in favor of the plaintiff for the balance, on which a writ of error was sued out by the plaintiff, and errors assigned on the finding, by the court, of questions of law.

By section 103 of the city charter, in case of the non-payment of the damages assessed, the person entitled thereto may sue for and recover the same from the mayor and common council of the city, in an action of debt.   By section 105, the

costs, damages, and expenses of laying out and opening any street, are assessable on lands and real estate benefited thereby, in proportion to the advantage derived therefrom. By section 115, if any such assessment upon any lot, tract, or parcel of land be not paid, the common council may, in their discretion, either bring an action on the case in the name of " The mayor and common council of the city of Newark," against the owner, for so much money laid out and expended, or may proceed to collect such assessment by the sale of the lands whereon such assessment has been imposed. (*Acts of* 1857, *p.* 170.)

By these enactments in the original charter of the city, provision is made for the recovery, by the owner of lands taken, of the damages assessed therefor, and for the recovery by the city of the amount assessed for benefits, by separate actions, the proceedings in which are entirely distinct.

By a supplement, passed in 1873, (*Acts,* 1873, *p.* 314,) known as the comptroller's act, the proceedings for the collection of awards for damages, and assessments for benefits, were modified and altered in some respects. By section 7 it was enacted, " that in case any assessment for benefits has been or shall be hereafter made in connection with any improvement, in the prosecution of which an award for damages has been or shall be made, the said award shall not be payable (except as is hereinafter mentioned,) until the assessment for benefits has been ratified by the common council, and only the difference between the same shall be payable to or by (as the case may be) the owner, at the time of such settlement of any lot or premises so assessed, and interest upon such award for damages shall commence on the date of the ratification of said assessment for benefits ; in case the city shall have taken possession of said lands and premises before the date of said ratification for benefits, said award shall be payable, and said interest commence on the date of said possession."

The finding of the court below was based on this latter act. The plaintiff insists that this act is unconstitutional, and, therefore, inoperative to affect his rights in the suit.

*First.* In that the city charter, as amended by the act of 1873, authorizes the taking of lands without compensation first made. If this contention has legal substance, it is equally fatal to the charter before the supplement of 1873 as to that instrument after the amendment. The original charter did not compel compensation to be made before the lands were appropriated to public uses for a street. The condemnation was perfected when the report of the commissioners assessing damages was made, and the owner was remitted to his remedy for his damages by an action on the award. But it is not necessary that compensation should precede the actual appropriation, where the property is taken by the state, or by a municipal corporation by state authority. It is sufficient that an adequate remedy is provided, which the party may resort to on his own motion to recover compensation. *Cooley on Const. Lim.* 560. The difference in the language of paragraph 18, Art. I, and of paragraph 9, section 7, Art. IV, of the constitution of 1846, (¶ 16, Art. I, and ¶ 8, sec. 7, Art. IV, of the amended constitution of 1875,) marks the distinction, in this respect, between a taking by a public municipal corporation and by an individual or private corporation. It is only where the right of eminent domain is exercised in favor of an individual or a private corporation, that compensation must precede the taking.

But even if this objection were tenable under other circumstances, it is not available in the present suit. The action is not to restrain the city from taking lands under a statute invalid on constitutional grounds, or for a trespass for an entry under such a legislative act. The plaintiff's lands have been taken by the city. He has acquiesced in its proceedings down to the issuing of the warrant. His suit is upon the warrant, which is legal only on the assumption of the validity of the action of the municipal authorities, out of which his cause of action arose. He cannot, with one hand, hold on to the warrant, which is the product of the acts of the city, under its charter, and, with the other, repudiate the proceedings as unlawful.

*Second.* That the benefits derived by the owner from the improvement cannot be considered in the compensation for lands taken, contemplated by the constitution. *Carson* v. *Coleman*, 3 *Stockt.* 106, was cited in support of this view. That case was between the owner of the lands about to be taken for a new channel of Assanpink creek and the managers named in a statute for opening, cleaning out and straightening the creek. The statute contained no provision for assessing compensation for lands taken, or estimating the value of the peculiar benefit resulting to individual landowners from the improvement. It was sought to be sustained on the assumption that the legislature intended that the benefits necessarily accruing to each individual landowner should constitute his compensation. The benefit thus invoked as compensation to the complainant for the injury he suffered, was such as he received from the improvement in common with other land-owners. The Chancellor held that such compensation was not that contemplated by the constitution, and declared the act void. In this connection the Chancellor construed the words "just compensation," in the constitution, to mean payment of the valuation of the property taken in money. The question, whether peculiar benefits derived by the owner from the improvement, in respect of which he may lawfully be compelled to contribute towards the payment of the costs and expenses, may not be regarded as an equivalent for money, was not involved in the case.

But the construction by the Chancellor of the words "just compensation," in the constitution, is not put in dispute by the fact of this case. Nor will it be necessary to consider in this case whether the supplement of 1873 may lawfully have the effect to postpone an action on an award of damages once made, until the assessment of benefits is completed. The plaintiff's award of damages was for a sum which, it is conceded, was an equivalent for the lands taken. It was payable in money. As will be shown presently, the supplement of 1873 operated upon the plaintiff's claim under the award merely as a rule of procedure to adjust the demand of the

plaintiff with the counter claim of the city for benefits, which were the subjects of a separate assessment legally made before the action was brought.

*Third.* That the supplement of 1873 impaired the obligation of a contract.

If it be conceded that the condemnation of lands under a statute after award made and ratified pursuant to its provisions, creates an obligation in the nature of a contract, (*In re Water Commissioners,* 2 *Vroom* 73,) the objection is without foundation.

The main argument on this branch of the case was placed on the fact that the plaintiff had sold his other lands on the street before the assessment of benefits was ratified. The contention was, that to give effect to the act of 1873, in the face of such a conveyance, would operate either to transfer the plaintiff's demand for his damages to his grantee, or to impose on him a personal liability to bear the expenses of improving lands of which he was not the owner.

When the improvement was completed, and the right of the city to indemnity for the expenses had arisen, or the assessment of benefits was actually made by the commissioners, or the sale and conveyance of the other lands were made, does not appear in the case. On writ of error, every intendment will be made in favor of the legality of the proceedings under review. An objection, to be available, must be made apparent on the face of the record.

For aught that appears on the record, the work was done and the assessment of benefits actually made, and only needed ratification by the common council to make it a finality before the plaintiff conveyed his other lands. To charge the plaintiff with benefits actually accruing to the lands while he was owner, would be neither inequitable nor illegal; although the assessment for the same was not consummated until after he had made sale and conveyance. The advantages of the improvement he enjoyed during his ownership of the property in its increased value, and was profited by in the increased price it would bring in the market. The assessment

of benefits was ratified before suit brought, and is in full force, not having been set aside or suspended by *certiorari*.

Under these circumstances, the obligation of the city to pay the damages awarded, is not, in any sense, impaired. This must be considered to be the position of the parties : an award of damages to the plaintiff, and an assessment of benefits in favor of the city. The supplement of 1873, so far as it is involved in this suit, merely regulated the prosecution of these claims by permitting both to be litigated, adjusted and recovered in one suit. The award of damages was ratified after the act of 1873 came in force. No remedy which existed when the plaintiff's cause of action was complete has been taken away.

Other exceptions were taken, which will be briefly noticed.

*First.* That under the supplement of 1873 the plaintiff is entitled to the full amount of his damages without deduction of benefits, on the ground that the city had taken possession of the lands before the assessment of benefits was ratified.

The city took possession on the 6th of October, 1873. The plaintiff, by the terms of the act, might then have brought suit, but he did not bring his action until after the assessment of benefits had been ratified. Having waited until the city had perfected its claim for the benefits, his demand became subject to the set-off or abatement, which is one of the main features of the act.

*Second.* That the city, by issuing a warrant for the full amount of the damages, waived their right to set-off the benefits.

The warrant was not intended as a certificate of indebtedness. The city had no power to issue such securities. It is a mere voucher, countersigned by the auditor of accounts to be presented to the comptroller, who alone had the custody of the assessments for benefits, and power to receive or discharge them. Neither of these officers had the authority to waive the rights of the city in the premises.

The remaining exception was manifestly prepared by counsel and signed by the court through inadvertence. It states that

the court held that the owner of the lands, when the assessment for benefits was ratified—that is, the plaintiff's grantee— was entitled to the damages awarded. The record shows an adjudication to the contrary. Judgment was given for the plaintiff for the balance of the damages after deducting the benefits.

There is no error in the proceedings below, and the judgment should be affirmed.